Good morning, my name is Ben Coleman. I represent appellant Rafael Munoz Gonzalez, who I think is number three on your list, but he was the number one defendant in the case. Our tentative plan, with the court's permission, is that I would take 12 and a half minutes. Mr. Treeman, who represents Mr. Aldana, is going to take 12 and a half minutes. And then Mr. Stewart, who represents Cesar Munoz Gonzalez, is going to take five minutes. And Ms. Landau, who represents Mr. Torres, was not going to argue unless the court had any specific questions for her. And then with my 12 and a half minutes, I'll watch the clock and hopefully save a minute or two for rebuttal, if I'm able to. Okay, that's how we'll proceed. Okay, for my argument, I'd like to focus on my client's mandatory life sentence. And in particular, I was going to try to address the first and second arguments in the case. The court wanted me to address any of the arguments in my individual brief. The first argument has to do with, I guess, what is considered to be a prior conviction in the context of Sections 841 and 851. And sort of the law in this area has changed over the years. Back in the 1990s, the judge could sort everything out at the time of sentencing. And then after Apprendi, things changed with respect to 841. And then as the Apprendi Revolution started to occur, this court has held that a jury must find that a conviction was entered before the defendant committed the instant offense. And then after the sentencing, in this case, the Supreme Court decided that any fact that determines a mandatory minimum, and in this case, we're dealing with a mandatory life sentence, and it's our position in this case that the jury never made a determination as to whether Mr. Munoz's 2000 conviction, which was alleged as an overt act in the conspiracy, occurred before he committed the instant conspiracy offense. And so for that reason, there's a constitutional violation. And at the very least, the case needs to be sent back for, at the very least, a 851 trial where the jury would make a determination as to whether Mr. Munoz committed the conspiracy after he had sustained a 2000 conviction. Why doesn't this fall into the exception for prior convictions? Well, it does, but there's an exception to the exception. And the exception to the exception, as this court made clear in Covey and Sandoval and other cases, is that with respect to the timing of the prior conviction, the jury must make that determination. That the jury must find that the defendant committed the prior conviction. So the exception says the fact of a prior conviction. It doesn't say the fact of another conviction. So the priority is part of the exception. That's why I was having trouble with that argument. I'm not sure I understand. So the exception says the fact of a prior conviction. Correct. It doesn't say the fact of another conviction, which then you could at least determine time or not, was not part of the exception. But the exception itself contemplates that the conviction is prior and that doesn't have to be proven to a jury, that the judge can decide that. Well, I think... What makes the temporal issue an exception to the exception when the exception itself includes the temporal component? Well, I think the exception is the fact of a conviction. See, you want to say the fact of a prior conviction, but that's what the exception says, the fact of a prior conviction, not the fact of another conviction, which is how the court would have had to express it if it didn't think that priority was part of the exception. Well, I guess I just fall back on this court's cases that, and I know they were in the 1326 context, but this court has said that the temporal relationship between the conviction and the instant offense must be alleged in the indictment. But the 1326 has, the timing has to be after the removal, after the conviction, before the deportation. I mean, it said out in the statute what the sequence of events is. There's nothing analogous in this exception. Well, I think in 841 it says that the defendant must commit this offense after the conviction, the prior conviction is final. So by the use of the word after, there needs to be a jury finding of a temporal relationship. So the government cites a Fourth Circuit and a First Circuit case saying that it's a fact of a conviction that doesn't have to be found by the jury. How do you distinguish those, I think, Smith and Fink? Right. Well, my recollection, we argued this in a reply brief, I think those cases were decided before Covey and Sandoval, and they're obviously from out of circuit. So they've never- They were done in 841, right? Whereas Covey and, I mean, the 1326 cases are looking at a different statute, correct? That's correct, but it seems that the principle would carry over. I mean, to limit this to just 1326 cases, I'm not sure why only in 1326 cases the jury would have to make a finding as to the temporal relationship. Well, Covey and says the exception is limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Now, those last factors aren't at issue here, and Covey and doesn't quarrel with the proposition that the exception is limited to prior convictions, which is what we have here. So how is it that Covey and is inconsistent with the result in this case? Well, I think that's the government's argument is that- I just read from Covey and. Right, but then Covey and then goes on to say after that sentence, and we had this in our reply brief, I think right after the sentence that Your Honor is they immediately go on to say it's not limited to the immigration context, and I'll try to find that- But the focus is on removal, because removal comes from a process that doesn't have jury trial and the other protections, and that's not what we're talking about here. Well, the fact that the defendant committed the instant offense that he was committed the instant conspiracy, the jury must find that he did that after the conviction. The fact that- I think it's removal the same as a conviction. I mean, the quotation I just read focused on the protections that come with the jury conviction, distinguishing removal. So Covey and talks about removal. Why does that apply here? We're not talking about removal here. Well, here we're talking about whether he committed the conspiracy after the conviction. Well, that's what he's convicted for. It's the after part that you're alleging that he didn't have the prior convictions, that the conspiracy came afterwards. But I'm not sure what it is the jury's supposed to find. I mean, the fact of the prior convictions, that's what the case law lets the court determine on its own. Our position is at the very least the jury has to find that he committed this prior conviction. When were the convictions? The conviction was in 2000, and it was alleged as an overt act. And in this case, Mr. Munoz, my client, then went into custody and was in custody for the next seven years. They had no evidence other than cooperating witnesses that he engaged in any drug trafficking activity after that particular conviction. And these cooperating witnesses were- Well, you haven't challenged efficiency of the evidence, so I don't know where that goes to. Well, it goes to, I mean, the government's contending that it's harmless error, that the fact that the jury didn't find that any temporal relationship is harmless. But in this case, the only thing we have, the only connection with hard evidence of my client with any drugs is that 2000 conviction. Other than that, all it is is the word of some cooperators who have- Who were apparently believed by the jury. Well, I'm not sure the jury believed everything that he said. Didn't have to believe everything. They believed enough. Well, we don't know what- You haven't challenged sufficiency of the evidence. So trying to tell me that the evidence was dependent upon cooperating witnesses doesn't really get you very far. Well, that's just to address their harmless argument. The bottom line is the jury never made any finding as to, in the verdict, there's no finding as to when my client committed the conspiracy. The jury was not instructed that it had to make a finding as to when my client committed the conspiracy. So there was no jury finding that my client committed the conspiracy after his prior conviction. So I don't have to challenge the sufficiency of the evidence. Was there a statute of limitations defense offered? There was no statute of limitations. There was no instructions on the statute of limitations. Did your client attempt the statute of limitations defense? I don't believe that he did. I believe the law would be, even if my client wasn't participating in the conspiracy, as long as the conspiracy continued, it wouldn't have happened. So the bottom line is I don't have to challenge the sufficiency of the evidence because the jury never made any finding as to whether my client committed the conspiracy after the conviction. With the time I had left, I was going to pivot to the next issue, unless there were any more questions, and that was the drug quantity issue. Under this court's case law, we believe it's been clear since about 2004 that for a jury to make a sufficient finding as to drug quantity to a particular defendant, they have to find two things. One, that the quantity was reasonably foreseeable to the defendant, and secondly, that the quantity was part of the defendant's jointly undertaking criminal activity. In this case, the jury was only instructed on the reasonable foreseeability prong. They were not instructed on... But that's not true. There was a Pinkerton charge here which explained everything fully, and the juries are entitled to consider the totality of the instructions, I guess, right? That's our responsibility, but how do you square your argument with the fact that there was a Pinkerton charge which did explain exactly the fact that it had to be jointly undertaken activity and reasonably foreseeable? Well, I don't believe that the Pinkerton instruction did convey that the drug quantity had to be part of the defendant's jointly undertaken activity. All the Pinkerton instruction said is that if you find that the defendant was a member of this conspiracy and you find that a particular act was reasonably foreseeable, you can hold them accountable for that act. But it didn't say that that particular act had to be part of his jointly undertaken activity. It wasn't specifically focused in that direction, but don't we consider the totality of the instructions by a jury when we review a case and look at all of the instructions? That's what the judge charges the jury. You look at the totality of my instructions, right? I think you do, but in this case, the jury specifically asked a question about the... They asked a specific question about the definition of reasonable foreseeability, if I recall correctly, right? Yes. And the judge answered the question. Right, and I think that that shows that the jury, after evaluating the totality of the instructions and looking at all of them, they were not sure how they were supposed to attribute drogue quantity to each particular defendant. And in response, the judge simply told them that they could reach that finding on a reasonable foreseeability standard and a reasonably foreseeable standard only. But we're looking at this for plain error, right? Well, our position is that the defendants objected when the judge gave the supplemental instruction and that that was sufficient. How about this issue? It was not as... This specific argument was not made. It's our position that that covered it. But even if it's a plain error standard, it's our position we've satisfied it, that the law in this circuit, since the Ortiz case, at least since... But the United States v. Reed, right, with the government raises, said that there wasn't any plain error when the exact same instruction was given. Right, and... By that for plain error, aren't we? Well, Reed never cited Ortiz and never looked at Ortiz. I mean, the law in the circuit has been clear since 04. Both of them were looking at the sentencing guidelines, not at the statutes. So arguably, we're still bound by Banuelos, correct? Well, in Banuelos, this Court said that the rule for the statute is the same as the rule for the guidelines. Right, but we construed the statute to mean something. And then if the guidelines changes, I don't know that that, per se, automatically changes our interpretation of the statute. That would be a hard argument to make. Well, I'll just respond, and then I'll sit down. Well, the guidelines had changed before Banuelos. I mean, the guidelines changed in the 1990s. So it's not like this has been a supplemental change that occurred after Banuelos was decided. But aren't we bound by the construction of the statute in Banuelos? Because Ortiz and Reed were both looking at changes to the guidelines, not to the statute, and don't mention that it affects our interpretation of the statute. Well, I would say that you should look to Ortiz, which has discussed what is absolutely clear, I think, in all the circuits. I mean, frankly, this is the law in all the circuits. So this would be the only circuit that has this unusual quirk in the law, that you only look at reasonable foreseeability and not jointly undertaken activity as well. And I've already run over time, so thank you. Thank you. Good morning, Your Honors. My name is Michael Tremont. I represented Mr. Aldana, both in the trial court and here before Your Honors. With regard to Mr. Aldana, what I'd like to do is talk for a few minutes about the significance of his individual brief. And the reason for that is because Mr. Aldana, unlike some of the other defendants, was in a fairly unique position, specifically with regard to Count 7. And his specific position that was unique was the fact that he had a 2,000, approximately 2,000, testimony about his having been involved in drug transactions in 2000 with Antivia. And then after, and I think it was five instances maybe that were testified to. Mr. Alvia, when he testified, specifically said that the transactions he was involved in with Mr. Aldana had nothing to do with any of the other named defendants that were contained in Count 7. Drugs didn't come from there. No taxing. No money back from there. They were completely separate, independent transactions. In addition, the testimony was that later on, when confronted by one of those defendants, Mr. Alvia denied that he was engaged in drug transactions. So for that particular transaction, there was an argument that could be made that that was not part of Count 7. Similarly, in 2008, in December, when the search was conducted at Mr. Aldana's residence, there was no testimony that connected the drugs located there or the testimony of the one cooperating witness about having provided those drugs that related either the drugs or the providing of the drugs to any of the defendants who were named in the Count 7 conspiracy. Specifically, no references to the Gonzalez brothers. So there again, when we're looking at that, it was my view that there was an argument that could be made that that transaction, while it may have been a conspiracy to distribute methamphetamine, was not part of the Count 7 conspiracy. We couldn't make either one of those arguments with regard to either of those because of the fact that the court refused our multiple conspiracy instruction, even though the court was specifically advised that that was something, it was an argument that we wished to make, and the evidence that I've summarized and is contained in the brief was the factual basis for making the argument. So the government argues that that issue was covered by other instructions. They point to number 21 and number 48. So can you explain why those were not adequate? They weren't adequate because they did not provide the legal basis to discuss the existence of two conspiracies, one of which was charged and one of which was not charged. And those instructions don't address that. So what language was missing in your view? The standard Ninth Circuit multiple conspiracy instruction, which is what we submitted and requested. So number 21 talks about if you don't have knowledge of the conspiracy but have to act in a way which furthers some object or purpose of the conspiracy, you don't thereby become a conspirator. So there's language in those instructions which indicate you can only be found guilty for the conspiracy in which you were actually involved. So why was that insufficient? Well, if you step back and you look even at the language that Your Honor cited, the problem becomes that we're not disputing the existence of a conspiracy. The conspiracy was testified to by the two cooperating individuals. What we're contesting is that it was the same conspiracy. And that instruction doesn't get you there. The multiple conspiracy instruction does. And that's exactly why there is a multiple conspiracy instruction, because under the theory that the government's arguing and Your Honor's suggesting, that's a useless instruction. Why does the Ninth Circuit have it if it doesn't serve a purpose? If I may. I think the government, you know, describes in its brief evidence that it showed several overt acts by Aldondo that connected him to the Puente 13 gang and the other defendants. Is that true or not? And there was. But I'm talking about Count 7. Count 7 is a drug conspiracy, not a racketeering conspiracy. So unless the two are exactly the same, and by that I mean as a matter of law, there's no difference between those charges, then you can't just look at Mr. Aldondo's membership in the racketeering conspiracy as convicting him automatically of Count 7. And that is exactly the effect of what took place in this case. So if the conviction for Count 7 doesn't stand, where does that leave you? Well, without the conviction of Count 7, if I'm not mistaken, Mr. Aldondo does not qualify as a career offender. And if he doesn't qualify as a career offender, that significantly impacts the sentence. It impacts the career offender calculation. Yes, because it's the predicated act that is the conviction that is used to formulate the basis for his career offender determination, which is what drove his sentencing. And you specifically ask for multiple conspiracy charges after Count 7? Absolutely. Both in writing and orally in court. So the language that you say is missing then, as I was trying to just clarify this, is in the instruction you requested, it says, even though that defendant may have been a member of some other conspiracy. Is that the missing language that you use? Yes. Okay, because the two instructions that the government points to do say you can only be found guilty for the conspiracy in which you were actually involved. And so what you say caused the error is it doesn't say, even though that defendant may have been a member of some other conspiracy. Is that what you're focusing on? That's what I'm focusing on. And the reason for that is because we would have argued, based on the affirmative testimony that came especially from Mr. Villa, that that was a separate drug conspiracy. You weren't precluded from arguing that, correct? I didn't have any legal authority to be able to argue it. And with the absence of legal authority, I could suggest factually, yes, that it wasn't included. But what I needed was I needed the authority of the instruction to be able to tell that jury that you can look, here's what the instruction says about that, and here's the testimony that supports the fact that it's different. And the significance, just to take it one step further, is that both of the acts that I'm talking about are the only acts in Count 7 that tie Mr. Aldana to drugs. And so both of those- But you could have argued the instructions say, if he's not a member of this conspiracy, then he can't be found guilty. So I guess I'm not understanding why your argument was hobbled. It's hobbled because I need to explain the other conspiracy and why his involvement in the other conspiracy doesn't automatically make him guilty of the conspiracy charged in Count 7. And I need the law standing behind me to be able to make that argument to the jury and point it out to them and show it to them so that they can go think about whether or not, even though he was guilty of a drug conspiracy, it's not this drug conspiracy. The same issue permeates the other issues that we raised in Mr. Aldana's separate brief. For instance, on the issue of the Pinkerton instruction that Your Honors have already talked about, the joint brief argument is narrowed in the context of a 924C argument. Mr. Aldana objected to the giving of the instruction and further objected to the use of the term act, which was the modification that the government requested with regard to that instruction. And the reason for that is because in this particular case, you have conspiracy on top of conspiracy on top of conspiracy. And the effect of the Pinkerton instruction basically says that if somebody is involved in a conspiracy and some other member of that conspiracy engages in a conspiracy, then the defendant in conspiracy one can be guilty of the conspiracy two, even though the defendant had no involvement in any of the conduct that was a subject matter of the second conspiracy. So here what ended up happening is, and this gets back again to my concern about the multiple conspiracy instructions, is that Mr. Aldana was at risk of being convicted in the racketeering conspiracy of the drug conspiracy, not because he was involved in the drug conspiracy, but because he was involved in the racketeering conspiracy. But the Gonzalez brothers, who were also involved in the racketeering conspiracy, were involved in the drug conspiracy. So the conspiracies ended up mixing. It's the same problem when you look at the special verdict form and the use of the term overall conspiracy in the special verdict form. What overall conspiracy are we talking about when the jury is being asked to make a determination with regard to amounts? The government points to the special verdict form under count two, which specifically found Mr. Aldana individually liable for the same amounts that were charged in the other count. So do you disagree with that? I'm sorry, do I disagree with that finding? Yeah. Yes, I do disagree with that finding because it's not clear. First of all, the two overt acts I'm talking about, those amounts don't get us up to what the jury found. So the only way Mr. Aldana could have gotten up to the amount determined by the jury would have been by bringing in drugs from someplace else. And my position is that when you say overall conspiracy, you're not telling the jury what conspiracy they are supposed to be looking at. So you're saying that, although the instructions said that  and then had the count two finding about the same amounts that were being charged, that those were less than what was necessary? I guess I'm not understanding your argument. What I'm saying, and I'm sorry if it wasn't clear, is that if you just step back and you look at the testimony of the amount of drugs Mr. Aldana was involved with, that does not get to the jury finding. You're saying that they could not have found that particular overt act unless they also considered the drugs involved in count seven, I think is what you're saying. No, the drugs are all mixed together. There is no count seven drugs versus racketeering drugs. That's the problem with overall conspiracy. So you're disagreeing with the special verdict. Is that what you're saying? Yes. Okay, you're saying that the jury reached a conclusion about the drugs for which Mr. Aldana was responsible, but that was an error because of the testimony? No, the language. Because that was in count two, right? That was in count two where they had the special verdict form. No, I think there was also a special verdict form for count seven. If I'm not mistaken, in the special verdict form uses the term overall conspiracy, without saying whether it's the racketeering conspiracy or whether or not it's talking about the count seven conspiracy. That's part of the problem. Let the government tell us about that. Thank you. There was an overt act specifically focused on the racketeering activity that he was found culpable of, right? There's no question about that. There are several overt acts that were alleged in connection with the racketeering cases, and, yes, he was found guilty of those and there was evidence. But I'm looking at the impact of the drug issues because of the impact of count seven. Thank you. Good morning. I'm Dean Stewart. I represented Cesar Munoz-Gonzalez at both trial and here with this court. My brief issues have to do with the sentencing of Cesar Munoz-Gonzalez, who was sentenced by himself. And the bottom line here is that our claim is the sentencing was flawed, and we presented in our opening supplemental brief a laundry list of reasons that we feel it was flawed, including the lack of confrontation as to the government's expert on fingerprints. That, however, was one of only six or seven different reasons that we felt it was an irregular and unreliable sentencing, not the least of which being the district court judge not recognizing that the standard was beyond a reasonable doubt. Ultimately, during the hearing, he came to realize that. But part of the confusion, I would suggest, is the fact that we had two different pre-sentence reports in the case, one recommending 20 years, one recommending a life sentence. This is an indicator of the confusion and the flaws basically and overall in the sentencing in this case. The argument that Crawford should apply during sentencing, I understand, asked this court to take a great leap. However, 851 is a different animal than all other sentencing because of the lack of discretion. And in this case, that was a big point. The judge said on the record that he didn't feel that Cesar Munoz-Gonzalez deserved a life sentence, but he had no choice but to impose it. This gives you the difference between 851 and other general sentencing. And I'd like to reserve the last minute or two for rebuttal. And my apologies for making that so quick. We'll hear from the government. So while you are just gathering your wits about you, maybe you can explain whether or not the count seven should have been charged as a separate conspiracy. Yes, sir. The count seven for the multiple conspiracy. Right. And for the record, may it please the court, Mack Jenkins on behalf of the United States and also with the court's indulgence, if there are questions about the motion to suppress, those will be handled by my colleague, Jennifer Williams. The reason the multiple conspiracy instruction was properly denied in the district court, in our view, is that what counsel is overlooking is that there was an abundance of evidence that certainly the interplay between the racketeering enterprise charging count one, a predominant function of that racketeering enterprise was drug trafficking. In addition, there is also, it's not just the physical act of transporting drugs or delivering drugs. And the evidence was that Mr. Defendant Aldana received and resold drugs that he received from other co-defendants in this case, Andy Villa and Mr. Nunez, Defendant Nunez. Those are other Puente 13 gang members. The evidence that was developed at trial and was largely unrefuted is that it's not just about selling the drugs, it's about being able to do so under the auspices of the Mexican mafia. The reason that Defendant Aldana was able to participate in these drug deals with these co-defendants and co-conspirators in Puente 13 was precisely because he was in a racketeering enterprise, and in fact a high-ranking member of that enterprise that provided him protection, provided him access to those drugs. In addition, it allowed him to conduct extortions of other members and taxing of other members. All of that falls under the drug conspiracy framework. The separate conspiracy that Mr. Trimmon is seeking to create simply does not exist on these facts. He referenced Mr. Nunez as an evidence of where this separate conspiracy would have provided him some alternate world conspiracy, but that simply is not borne out by the record because it is Mr. Nunez who talks about meeting Defendant Aldana, and I'll just briefly quote from Government's excerpt starting at 426, and it is Mr. Nunez, again pointed to by Defendant Aldana, who talks about selling drugs with Defendant Aldana, watching Defendant Aldana regularly sell drugs, going on taxing missions with Defendant Aldana, and this is a charged co-conspirator in that drug trafficking conspiracy. My understanding essentially from what I think is really argued by Defendant Aldana is that he complained about the scope of that conspiracy. Not that there was a separate one, but because he was in custody for a certain part, and he only dealt primarily with certain Puente 13 members, that therefore the fact that he was held liable for a larger amount of that, that's really what it seems to me as being complained of. But that's not a multiple conspiracy, and that's not a multiple conspiracy defense, and that's why we believe it was properly rejected by the district court. So he's arguing that the jury in determining the drug amounts for which he was responsible was confused by the lack of a multiple conspiracy instruction, and then held him responsible for drugs that were not part of his conspiracy. What's your response to that? Our response is that is precisely what the Pinkerton instruction was meant to handle. And that being that the jury here did find that he was in that same conspiracy with other Puente 13 members, and that the scope that was reasonably foreseeable to Defendant Aldana was of the quantities that they found. Meaning that he could argue that because I was in custody, because I mainly dealt with Andy Villa and Mr. Nunez, there may be this larger Puente 13 conspiracy and drugs flown everywhere which way, but I really only knew about, or it was only reasonably foreseeable to me, this small amount. But the jury rejected that because frankly the evidence was overwhelming that everyone knew that in Puente 13, where they had an actual Mexican mafia brother, which provides them a lot of esteem and authority, they were selling a lot of drugs regularly. They were making other people sell drugs. They were extorting drugs and drug proceeds from them. It is no secret to Defendant Aldana, who in fact bragged later on in 2008 about getting essentially a promotion. His job was to come extort other members. He talked about it with other co-conspirators that, hey, we got to go jam these guys up. In the parlance of they're not paying, they're going to give us money or give us drugs. Defendant Aldana knew exactly how Puente 13 operated and that methamphetamine was a primary economic lifeblood. And so again, that's what I think the argument that he was really making, and I think it was rightfully overwhelmingly rejected by the jury because Defendant Aldana was a big-time player in this enterprise and he well knew that methamphetamine fueled that enterprise. I guess I'm still pausing on the multiple conspiracy issue. Because the case law doesn't require or doesn't invite the judge to make a decision as to which argument is more credible. The requirement is that there be some evidence in support of the defendant's theory. And are you saying there was no evidence that qualifies to support the proposition that some of the deals that were being done he was doing on the side, not as part of the Puente 13 conspiracy? Yes, Your Honor. And I understand the multiple conspiracy test is a difficult one because as you pointed out, if there's essentially a modicum of evidence that could support that theory, then in most cases it should be given. Here, that did not exist. And the reason that it did not exist, in our positions we argue that the theories that the defendant Aldana posited for why he should have been allowed to argue this theory, still render him guilty of the drug conspiracy as charged in count seven. So even on his best argument, our position is that it provides him zero support, which is why the court denied it. Because even in those various iterations of a smaller conspiracy, or I really was just working with these two guys, under the auspices of Puente 13 in the 2000s through 2008, they were run by two Mexican mafia brothers. The latter of which is the lead defendant in this case, who defendant Aldana worked very, very closely with. His explanations about this multiple conspiracy theory is, in our view, not a defense at all. And that's why it wasn't given. But I can see that if the court were to find there was some modicum of, a reasonable modicum of evidence, it should have been given. But here, even on defendant's own arguments and in his reply brief, we provide, we argue that it provides no defense at all. And I will just respond to the additional arguments briefly. And I'm also happy to respond to any additional arguments not raised by counsel, just to try and be as pithy as possible. I believe the court accurately pointed out the flaws in the issues related to the prior convictions. We would point out first that we do think, at first that argument is that several of these 851 enhancement arguments being made now before the appellate court were waived. There's no good cause for the reasons that they weren't brought earlier, they could have been brought earlier. The only articulated objection to the 851s in this case, which was briefed by the district court or at the district court level, was whether or not, and where an overt act is charged, as also in 851, is encompassed in a broader conspiracy, whether that technically is prior, because the conspiracy essentially could predate and post-date the 851. So does that mean prior, because the beginning of the conspiracy precedes it? And of course, in our view, Baker answers that question conclusively when it says you measured by the end date of the conspiracy, which in this case at least exceeded the 851s by a decade. And so we think Baker conclusively answers that question. And they're arguing that the Baker was overruled by Nordby. And we recognize that there is maybe not ambiguity, but there certainly were changes to Baker, but in our view, it was a very narrow review and overturning select portions of Baker, but in our analysis of the case law and the progeny thereafter, they have to specifically overrule that portion or declare it bad law or it has to be directly contradictory. In our view, it seemed undisturbed. They didn't touch that portion of it, that being the temporal relationship of when a conspiracy ends and whether that then means that a conviction is prior, a prior conviction. So that is not irreconcilable. We don't think it was touched by subsequent cases, and so our view is that it remains good law. And other cases support that, both the out-of-district court cases that we cited in the Fourth and Second Circuit, I believe, but also the fact that cases that state an ongoing conspiracy when particularly here, which I think is very compelling, we didn't just pick dates out of nowhere. What I mean is that the overt acts in this case did stem for a decade. There were overt acts that actually came after these prior convictions. The prior convictions were pretty old, early 90s, I think 2002 is the latest. The predominant evidence in this case was 2006 to 2010. So I think it supports Baker by the fact that, of course, if the majority of the weight of all the criminal activity is taking place almost a decade after this prior conviction, it would seem to make little sense to say that that prior conviction is not prior, just because the conspiracy is overruled. The drug quantity, whether or not you had to allege a drug quantity in the indictment, touching on what is now very standard, that, yes, you do. And we do not see how that impacts the temporal relationship of priors at all. It's specifically related to the drug quantities that you must allege them. As we concede, you must. And I will then just skip to the question about the drug quantity findings. And our position, as also highlighted by the court, is that the totality of the instructions, as is allowed under this court and Supreme Court law, you consider all the instructions constructively. And, in fact, Judge Matz said several times, don't focus on one thing, focus on the entirety of our instructions. He said that when there was a question given to him, and he answered it directly, and we believe accurately about what reasonable foreseeability means. And in doing so, he also said, but remember all these other instructions. And encompassed in that were all these other instructions is Pinkerton. As the court pointed out in opening responses, Pinkerton, in our view, exactly covers the jointly undertaken portion that they say is now lacking. It doesn't say those specific words, but as we point out, it exactly is what the court is talking about. When it says the same conspiracy, and in furtherance of that conspiracy, it makes it very clear that a component of Pinkerton is the defendants need to be in the same conspiracy, need to be committed to that same conspiracy, and they need to be conducting acts in furtherance of that same conspiracy even before you get to reasonable foreseeability. So we think the combination of the Pinkerton instruction, the court's response to the one jury question, and, again, the fact that the court said consider all of these instructions as a whole, we think satisfies the challenge there that they were somehow misled about what they needed to find. And unless the court has any further questions about any other issue, unless the court has any questions on the search, I will conclude at this point. Rebuttal. I think that the one comment I wanted to make, and then I'll let Mr. Treeman rebut, is that the issue about the multiple conspiracies and the drug quantity finding, I think, are somewhat related. And the problem in this case is there was no jointly undertaken prong given as to the drug quantity finding. The Pinkerton instruction, I know Your Honor had asked about it, and they just argued that that covered it. It just didn't cover it, and the Pinkerton instruction only covers reasonable foreseeability. It says, yes, you have to be part of this conspiracy, and then the acts have to be reasonably foreseeable. But the guidelines which govern the 841B analysis say that the jointly undertaken concept is a harder hurdle to make than just simply reasonable foreseeability. Pinkerton is only a reasonable foreseeability standard. It doesn't require jointly undertaken activity. But the Pinkerton charge embraces jointly undertaken activity. That's where I just disagree. They have not cited any part of that instruction that says to be held liable for a drug quantity finding or for anything, it has to be part of your jointly undertaken activity. It just says it has to be part of the conspiracy. They didn't specifically talk about it in the context of the drug dynamics is your issue, right? It's that, and also just in general. It just says it has to be part of the conspiracy, but not part of the specific defendant's jointly undertaken activity. And then, of course, the jury asks a specific question about how do we determine this reasonable foreseeability as to drug quantity, which shows they were focused on this issue. And had the jointly undertaken activity requirement been given, there may have been a different result here. So even if you want to use plain error review, we think that there was prejudice here, and there should at least be a new trial as to drug quantity findings. If I may, the argument the government council made mixed apples and oranges. When you started talking about Mr. Aldana being some upper echelon in point A13 and going out and taxing people, that may be related to the racketeering case. Account seven is a different conspiracy. It's a conspiracy to possess with the intent to distribute methamphetamine, not to tax somebody who's a drug dealer, number one. Number two, when government council says that... The auspices, if he's viewed by the market that he's serving as somebody who's connected with the gang and is operating as part of it, even if he's doing the deal on the side, does that mean that it's not part of the point A13 conspiracy? If he's using the fact that he's got the badge of office, if people view him as part of that conspiracy, even if he's pocketing himself, isn't that somehow still part of the same conspiracy? First of all, there was no testimony to that effect, but past that issue. The fact that somebody is part of a gang and the fact that the gang may engage in drug transactions, however you want to define those, doesn't automatically make somebody who's a member of the gang guilty of a 21 U.S.C. 846 conspiracy. Those are two separate crimes, and unless they're viewed separately, then there is a difference. The gang is so much defined as being a drug gang. I mean, that's the lifeblood, that's the revenue stream. I'm not sure I understand the separation. Well, one, this gang, just reading through the indictment makes it clear that it's not just a drug gang. That's not what was alleged. But let's face it, a lot of revenue is coming in through the drug dealing. And so what I'm pointing to is what the evidence was with regard to Mr. Aldana and the overt acts. Mr. Villa's five sales of methamphetamine to Mr. Aldana took place between September of 2001 and June of 2002. Mr. Aldana was not a recognized upper echelon member of anything during that time period, and there was no testimony that he was. That's the only time Mr. Villa sold methamphetamine to Mr. Aldana. That's a sale from Villa to Aldana. The source of the methamphetamine, according to the testimony, was Will Stefani, or someone known as Chino. Neither Mr. Rafael Gonzalez, nor Mr. Cesar Munoz Gonzalez, nor Mr. Michael Anthony Torres, who are the named defendants in Count 7, had anything to do, had anything to do, with the sales to Mr. Aldana. All the money from the methamphetamine sold to Mr. Aldana went into Mr. Villa's own pocket. Mr. Villa paid no taxes for any of the sales. None of the sources of the methamphetamine that he sold were from the Gonzalez or Mr. Torres. In other words, there was evidence that, and that's the transaction. And if you look at Overt Act 4, that's the transaction they're talking about. And that, I submit, we should have been entitled to argue, was a separate conspiracy. And the significance of that is, is that if you take that Overt Act out of Count 7, because you conclude it's not part of Count 7, and you take the other Overt Act, Overt Act 77 out, in which we're making the same argument, all of the allegations with regard to Mr. Aldana and drugs in Count 7 are gone. Now, I submit we should have been entitled to be able to make that argument to a jury, especially with these facts, and I'm citing from my brief, and the citations to the record are in the brief. And the point is that there was evidence that we should have been entitled to make that argument and let the jury make its call, however the jury's going to make its call. But we weren't allowed to make that argument. Thank you.
judges: Clifton, Ikuta, Block